**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JOSHUA DAVIS**                                                                 **PLAINTIFF**

**V.**                                              **4:09CV00030 JMM**

**THE GOODYEAR TIRE & RUBBER COMPANY**                          **DEFENDANT**

<u>**ORDER GRANTING SUMMARY JUDGMENT**</u>

Pending is the Defendant's Motion for Summary Judgment.  Plaintiff has responded to the motion and the Defendant has replied.  For the reasons set forth below, the Motion is GRANTED.

I.      <u>Facts</u>

The following facts are undisputed:

Plaintiff Joshua Davis was injured while working on equipment at the Almatis manufacturing plant on March 11, 2008.  Plaintiff claims that he was working alongside a hose-fitting assembly when a burst in the hose-fitting assembly sent a stream of fluid in his direction.  The hose-fitting assembly consisted of multiple components, including metal fittings, band clamps, and rubber hose.

Defendant Goodyear Tire & Rubber Company manufactured the rubber hose and supplied it in bulk to hose distributors.  Almatis purchased reels of Goodyear rubber hose in bulk from one or more hose distributors.  Many types of fittings could have been inserted in the ends of the Goodyear hose.  Almatis purchased metal fitting and band clamps from suppliers other than Goodyear.

The Almatis maintenance department maintained an inventory of rubber hose, metal

fittings, and metal band clamps that it used to fabricate hose-fitting assemblies.  The Almatis

maintenance department possessed a clamping device (supplied by an entity other than

Goodyear) that was used to attach the metal band clamps around the ends of the hose to hold the

fittings in place.  Almatis maintenance department personnel fabricated hose-fitting assemblies

by cutting a section of hose from the appropriate reel of rubber hose, selecting two fittings from

inventory, inserting those fittings into the ends of the hose and then clamping each fitting onto

the hose using the band clamping device.  Once the hose-fitting assemblies were fabricated,

Almatis personnel would then install them on the equipment where they were needed.

     Although Goodyear supplied one component of the hose-fitting assembly- the rubber

hose- it did not supply metal fittings, band clamps, or the band clamping device that was used to

fabricate the hose-fitting assembly at issue in this case.  Goodyear did not design, control, test, or

otherwise participate in the fabrication of the hose-fitting assembly in this case.

     Plaintiff contends, however, that the hose had a limited range of uses and that Goodyear

was, or reasonably should have been aware, that a hose purchased for carrying liquid under

pressure required a clamp or fitting.  Plaintiff contends that Goodyear should have provided

instructions or warnings as to the proper size or type of metal fittings or band clamps to be used

with the industrial hose used at the Almatis Plant that caused injury to Plaintiff.  Plaintiff filed

suit against Goodyear for strict products liability, negligence in design, manufacture, and

distribution of the hose, including failure to warn, and breach of implied warranty.

     However, because Plaintiff's sole liability expert, Mr. Russ Rasnic, P.E., found no design

defect and no manufacturing defect in the rubber hose supplied by Goodyear it appears that

Plaintiff has abandoned all claims expect its negligence claim for failure to warn.  (Pl.'s Brief in

Supp. of Resp. to Summ. Judg. At p.1.)  The Defendant has filed a motion for summary

judgment regarding this issue based upon the component-parts doctrine.

II.    Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there
> is a need for trial -- whether, in other words, there are genuine
> factual issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific
> facts, showing that there is a genuine dispute on that issue.  If the
> respondent fails to carry that burden, summary judgment should be
> granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

III.     Discussion of the Law

The Arkansas Supreme Court discussed the component-parts doctrine in *Wagner v.*

*General Motors Corp.*, 258 S.W.3d 749 (Ark. 2007).  The court stated:

> The component-parts doctrine . .  provides that suppliers of inherently safe component
> parts are not responsible for accidents that result when the parts are integrated into a
> larger system that the component-part supplier did not design or build.  The doctrine
> applies to claims for negligence and strict liability.  If the component-parts manufacturer
> does not participate in the integration of the component into the finished product, it is not
> liable for defects in the final product if the component itself is not defective.

*Wagner*, 258 S.W.3d at 755 (internal citations omitted).  The court noted that the component-

parts doctrine is outlined in Section 5 of the Restatement (Third) of Torts: Products Liability.  *Id.*

at 755-56.  While the court stated that the component-parts doctrine had not yet been adopted in

Arkansas, the Arkansas Supreme Court utilized the doctrine by finding that there were genuine

issues of material facts as to (a) whether there was a defect in the component part at issue; (b)

whether the defect caused any harm; and (c) whether the defendant substantially participated in

the integration of the component into the design.  *Id.*

Plaintiff argues that the Arkansas Supreme Court in *Walker* did not "adopt" the

component-parts doctrine.  This may be true.  However, the Arkansas court applied the doctrine

to the facts of the case.

Further, the U.S. District Court for the Western District of Arkansas in *Ford v.*

*Traditional Sporting Goods, Inc.*, 2006 WL 1582082 (W.D.Ark. 2006) (applying Arkansas law)

4

found that the manufacturer of non-defective gun powder had no duty to warn plaintiff of potential dangers when used in conjunction with a rifle.  The district court stated, "The [gun powder] is not an inherently dangerous product, and the [manufacturer] had no control over the design, testing or manufacturing of the Traditions rifle." *Id.* at *2.  The court cited with approval *In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation v. E.I. DuPont De nemours and Co.,* an Eighth Circuit case where the court found the manufacturer of a non-defective component part not liable in a multidistrict products liability case.[1]  The Court stated, "[S]uppliers of inherently safe 'component parts are not responsible for accidents that result when the parts are integrated into a larger system that the component part supplier did not design or build.'" *In re TMJ Implants,* 97 F.3d 1050, 1055 (8th Cir. 1996) (quoting *Sperry v. Bauermeister, Inc.*, 4 F.3d 596, 598 (8th Cir. 1993)).  The Eighth Circuit further found that "[a] failure to warn claim brought against suppliers of multi-purpose components is precluded by the same raw material/component part supplier analysis that forecloses design defect claims." *Id.* at 1058.

In the instant case, it is undisputed that the Goodyear hose was not defective.  The hose has multiple safe uses.  The hose is not inherently dangerous.  The Defendant did not supply metal fittings, band clamps, or the band clamping device that was used to fabricate the hose-fitting assembly at Almatis.  The Defendant did not design, control, test, or otherwise participate in the fabrication of the hose-fitting assembly at issue in the case.  Pursuant to the component-parts doctrine, the Court finds that the Defendant did not have a duty to warn end-users of the

---

[1]  The parties stipulated on appeal that "the basis of component part liability law is constant in all jurisdictions." *In re TMJ Implants*, 97 F.3d at 1056.

hose-fitting assembly of the dangers posed by the incorporation of the hose into that product.

Summary judgment is granted on the failure to warn issue.

IV.    Conclusion

Plaintiff has abandoned his remaining products liability claims.  Therefore, Defendant's

Motion for Summary Judgment (Docket # 18) is GRANTED.  The Clerk is directed to close the

case.

IT IS SO ORDERED this 26th day of April, 2010.

_____
James M. Moody
United States District Judge